**2023-109**

# United States Court of Appeals for the Federal Circuit

---

In Re: WAVERLY LICENSING LLC,

*Petitioner.*

---

*On Petition for Writ of Mandamus to the United States District Court for the District of Delaware, Case Nos. 1:22-cv-420-CFC, 1:22-cv-422-CFC, Honorable Colm F. Connolly, Judge*

---

## REPLY IN FURTHER SUPPORT OF PETITION FOR A WRIT OF MANDAMUS

DAVID R. BENNETT
DIRECTION IP LAW
P.O. Box 14184
Chicago, IL 60614
D: (312) 291-1667
dbennett@directionip.com

*Counsel for Petitioner*
*Waverly Licensing LLC*

December 13, 2022

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Counsel for the Petitioner Waverly Licensing LLC ("Waverly") certifies the following:

1.     The full name of every party or *amicus* represented by me is:

Petitioner Waverly Licensing LLC

2.     The name of the real party in interest represented by me is:

Not applicable.

3.     All parent corporations and any publicly held companies that own 10% or more of the stock of the party or *amicus* represented by me are:

None

4.     The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

David R. Bennett, Direction IP Law

Jimmy Chong, Chong Law Firm

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

| In re: Nimitz Technologies LLC | 2023-103 (Fed.Cir.) |
|---|---|
| Nimitz Technologies LLC v. CNET Media, Inc. | 1:21-cv-1247-CFC (D.Del.) |
| Nimitz Technologies LLC v. BuzzFeed, Inc. | 1:21-cv-1362-CFC (D.Del.) |
| Nimitz Technologies LLC v. Imagine Learning, Inc. | 1:21-cv-1855-CFC (D.Del.) |
| Nimitz Technologies LLC v. Bloomberg L.P. | 1:22-cv-0413-CFC (D.Del.) |
| Backertop Licensing LLC v. August Home, Inc. | 1:22-cv-0573-CFC (D.Del.) |
| Backertop Licensing LLC v. Canary Connect, Inc | 1:22-cv-0572-CFC (D.Del.) |
| Lamplight Licensing LLC v ABB, Inc., | 1:22-cv-0418-CFC (D.Del.) |

i

| Lamplight Licensing LLC v Ingam Micro, Inc., | 1:22-cv-1017-CFC (D.Del.) |
| Mellaconic IP, LLC v. Timeclock Plus, LLC | 1:22-cv-0244-CFC (D.Del.) |
| Mellaconic IP, LLC v. Deputy, Inc. | 1:22-cv-0541-CFC (D.Del.) |
| Swirlate IP LLC v. Quantela, Inc. | 1:22-cv-0235-CFC (D.Del.) |
| Swirlate IP LLC v. Lantronix, Inc. | 1:22-cv-0249-CFC (D.Del.) |
| Creekview IP LLC v. Jabra Corporation | 1:22-cv-0426-CFC (D.Del.) |
| Creekview IP LLC v. Skullcandy Inc. | 1:22-cv-0427-CFC (D.Del.) |

6.    Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed.Cir. R. 47.4(a)(6).

None.

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................III

TABLE OF AUTHORITIES .................................................................. IV

TABLE OF ABBREVIATIONS ............................................................. V

SUMMARY OF REPLY .......................................................................1

REPLY ................................................................................................4

   I.  STANDING ORDERS CAN ONLY BE USED TO ADDRESS ISSUES ON WHICH THE FEDERAL RULES ARE SILENT, YET THE STANDING ORDERS ADDRESS ISSUES COVERED BY RULE 7.1 ...........................4

     A. The District Court's Rule 7.1 Standing Order Violates Rule 83(b) Because Fed.R.Civ.P. 7.1 Addresses the Same Issue ................................4

     B. Rule 7.1 Also Addresses the Same Issue as the Standing Order Regarding Third-Party Funding Arrangements So the Standing Order Also Violates Rule 83(b) ...................................................................................5

     C. The District Court Was Required, at a Minimum, to Proceed Through the More Vigorous Local Rule Vetting Process if it Sought to Amend Rule 7.1 Disclosure Requirements....................................................7

     D. The Court's Inherent Powers Do Not Justify the Standing Orders............9

  II. THE STANDING ORDERS DO NOT SUPPORT IMPORTANT PURPOSES AND ARE BIASED ..................................................10

     A. The Standing Orders Will Only Create the Misperception that a More Thorough Conflict Determination will be Performed While Creating Inconsistent Gaps..................................................................10

     B. The Standing Orders are Biased Because They are Only Interested in Controls and Transparency for Certain Entities .......................................13

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............15

# TABLE OF AUTHORITIES

## CASES

*Arunachalam v. Int'l Bus. Machines Corp.*,
  2016 WL 5403592 (D. Del. Sept. 26, 2016), *aff'd*, 759 F.App'x 927 (Fed. Cir.
  2019)..................................................................................................................11

*Cent. Tel. Co. of Va. v. Sprint Comm. Co. of Va.*,
  715 F.3d 501 (4th Cir. 2013)...............................................................................11

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)................................................................................................9

*Nimitz Techs. LLC v. Cnet Media, Inc.*,
  2022 U.S. Dist. LEXIS 215395 (D.Del. Nov. 30, 2022) ...................................5, 7

*O'Connor v. Wells Fargo Bank, N.A.*,
  2013 WL 1281925 (N.D. Ga. Mar. 27, 2013) ....................................................12

*Wilson v. Iron Tiger Logistics, Inc.*,
  628 F.App'x 832 (3d Cir. 2015) ........................................................................4, 5

## OTHER AUTHORITIES

Meeting of the Advisory Committee on Civil Rules Agenda Book, Philadelphia,
  P.A. (Apr. 10, 2018)...............................................................................................6

## RULES

D.N.J. L.R. 7.1.1 .......................................................................................................6

Fed.R.Civ.P. 7.1 ................................................................................................. passim

Fed.R.Civ.P. 83(a)(1).......................................................................................... passim

Fed.R.Civ.P. 83(b) ............................................................................................. passim

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| Chamber Brief | Brief for Amici Curiae Chamber of Commerce of the United States of America and Lawyers for Civil Justice in Opposition to Petition for a Writ of Mandamus (Appeal No. 23-108, Doc. #5 (Fed.Cir.)) |
| Intel Brief | Brief for Amicus Curiae Intel Corporation in Support of Respondents (Appeal No. 23-108, Doc. #12 (Fed.Cir.)) |
| Rule 7.1 | Fed.R.Civ.P. 7.1 |
| Rule 7.1(a) Standing Order | Standing Order Regarding Disclosure Statements Required by Federal Rule Of Civil Procedure 7.1 dated April 18, 2022 (D.Del.). (J. Connolly) (Appx003) |
| Rule 83(a) | Fed.R.Civ.P. 83(a)(1) |
| Rule 83(b) | Fed.R.Civ.P. 83(b) |
| Standing Orders | Collectively the Rule 7.1(a) Standing Order and Third-Party Funding Standing Order |
| Third-Party Funding Standing Order | Standing Order Regarding Third-Party Litigation Funding Arrangements dated April 18, 2022 (D.Del.). (J. Connolly) (Appx004-005) |

## SUMMARY OF REPLY

The amicus briefs justify the Standing Orders based on certain Federal Rules and public policy, but the Standing Orders are contrary to those Federal Rules and are not tailored to support any public policy argument.

Fed.R.Civ.P. 83(b) ("Rule 83(b)") only allows standing orders to be entered when there is no other controlling law, and the Federal Rules are silent on the issue. However, both Standing Orders were issued to supplement the disclosures in Fed.R.Civ.P. 7.1 ("Rule 7.1"). Furthermore, according to the Advisory Committee Notes, only local rules may be used to supplement Rule 7.1. Even then, the Advisory Committee Notes raise the risk of seeking too much disclosure and concluded that "[i]t has not been feasible to dictate more detailed disclosure requirements in Rule 7.1(a)." This position and Rule 7.1 have remained untouched for decades for non-diversity cases, even when disclosure requirements were added to Rule 7.1 this year solely for diversity cases. If it is appropriate to supplement the disclosure requirements of Rule 7.1, then, at a minimum, the district court was required to comply with the more vigorous vetting procedure in Fed.R.Civ.P. 83(a)(1) ("Rule 83(a)"), which states that to "adopt and amend rules governing its practice," a district court must "act[] by a majority of its district judges" and only after "giving public notice and an opportunity to comment." Instead, a lone district court judge propagated the Standing Orders amending the disclosures of Rule 7.1 without any

public notice or opportunity to comment.  The district court exceeded its authority under Rule 83(b) and did not comply with Rule 83(a) when it implemented its Standing Orders to change the Rule 7.1 disclosure requirements. The Standing Orders are an abuse of discretion.

The public policies on which the amicus briefs rely to support the district court's authority for implementing the Standing Orders are not supported by the disclosures required by the Standing Orders.  The Standing Orders are biased and do not provide any more certainty in avoiding conflicts.  The Rule 7.1 Standing Order burdens only a few specified types of entities ("nongovernmental joint venture, limited liability corporation, partnership, or limited liability partnership") with producing too much information ("every owner, member, and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified") while allowing other types of entities to skate by without any disclosures (*e.g.*, corporations, limited liability companies, and trusts).  For example, publicly traded limited partnerships would be required to disclose every stockholder and potentially take discovery from stockholders who are also partnerships to determine their owners, whereas publicly traded corporations would only need to comply with the disclosures of Rule 7.1 (any parent corporation and any publicly held corporation owning 10% or more of its stock) and privately held corporations would disclose

2

nothing. The Third-Party Funding Standing Order goes far beyond requiring the name of any potential entity to seeking information with no relevance to conflicts and is also targeted at a specific type of entity while ignoring other entities.

The Standing Orders are also not seeking who controls the litigation because they only require disclosures from a limited class of entities and, again, allow many other entities to avoid making any "transparency" disclosures. The Third-Party Funding Standing Order is targeted at entities who receive non-recourse funding from third parties (regardless of control) in exchange for a financial interest. On the other hand, third parties who control litigation don't need to be disclosed if they don't provide non-recourse funding or receive a financial interest. The Standing Orders are therefore not designed for disclosing control or seeking transparency, and instead are biasedly attacking entities the district court has deemed to be villains while ignoring entities who do not bother the district court's sensibilities.

The Standing Orders are therefore an abuse of discretion.

**REPLY**

## I. STANDING ORDERS CAN ONLY BE USED TO ADDRESS ISSUES ON WHICH THE FEDERAL RULES ARE SILENT, YET THE STANDING ORDERS ADDRESS ISSUES COVERED BY RULE 7.1

The Federal Rules identified by the amicus briefs establish that the Standing Orders were improperly issued as standing orders because they should have proceeded, if at all, through the Rule 83(a)(1) local rule procedure.

Rule 83(b), which is titled "Procedures when there is no controlling law," applies to standing orders. As quoted in an amicus brief, "Rule 83(b) allows courts discretion to manage cases *when the rules are silent on an issue* …." *Wilson v. Iron Tiger Logistics, Inc.*, 628 F.App'x 832, 834, n.2 (3d Cir. 2015) (emphasis added); (Intel Brief at 5). The two Standing Orders, however, address issues on which the Federal Rules are not silent.

### A. The District Court's Rule 7.1 Standing Order Violates Rule 83(b) Because Fed.R.Civ.P. 7.1 Addresses the Same Issue

As is evident from the title and the text of the Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil Procedure 7.1 ("Rule 7.1 Standing Order"), Rule 7.1 addresses the same issue as the Rule 7.1 Standing Order. The district court also issued a Memorandum stating that the "comments [in Rule 7.1] informed my decision to issue on April 18, 2022, a Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil Procedure 7.1 []." *Nimitz Techs. LLC v. Cnet Media, Inc.*, 2022 U.S. Dist. LEXIS 215395, *5 (D.Del. Nov.

30, 2022).  The Rule 7.1 Standing Order and the district court acknowledge that the Federal Rules are not silent on the issue addressed by the standing order, so the district court improperly issued the Standing Orders in violation of Rules 83(b) and are an abuse of discretion.  *Wilson*, 628 F. App'x at 834, n.2.

Furthermore, as explained in Section I.C below, disclosure requirements supplementing Rule 7.1 must be promulgated by local rule as opposed to a standing order, but that is still not advisable.  As the Advisory Committee Notes concluded in 2002, "[i]t has not been feasible to dictate more detailed disclosure requirements in Rule 7.1(a)."  This conclusion is still true 20 years later because, despite amending disclosure requirements in Rule 7.1 for diversity cases, Rule 7.1 has not been amended to require any further disclosure requirements for non-diversity cases, which are at issue here.

**B.      Rule 7.1 Also Addresses the Same Issue as the Standing Order Regarding Third-Party Funding Arrangements So the Standing Order Also Violates Rule 83(b)**

The "Standing Order Regarding Third-Party Funding Arrangements" ("Third-Party Funding Standing Order") also addresses the same issue as Rule 7.1.  The district court stated that it "modeled the Third-Party Funding [Standing] Order on Local Civil Rule 7.1.1 of the District of New Jersey's Local Rules," which supplements the disclosures of Rule 7.1.  *Nimitz*, 2022 U.S. Dist. LEXIS 215395, *9; *also see* Meeting of the Advisory Committee on Civil Rules Agenda Book 212,

Philadelphia, P.A. (Apr. 10, 2018) (local rules mandating the disclosure of the identity of litigation funders relate to Rule 7.1). Amicus Intel likewise agrees that the Third-Party Funding Standing Order is "going beyond the bare minimum required by Federal Rule of Civil Procedure 7.1." (Intel Brief at 6).

Unlike the district court's Third-Party Funding Standing Order here, the District of New Jersey issued its Local Civil Rule 7.1.1 under Rule 83(b) only after completing a vigorous vetting procedure in its district:

> The Court being vested with authority pursuant to 28 U.S.C. § 2071 and Rule 83 of the Federal Rules of Civil Procedure to make and amend local rules [under Rule 83(b)]; proposed amendments to Local Civil Rules having been submitted to the Lawyers Advisory Committee and the public for comment; comments having been received and considered, and the proposed amendments having been approved by the Board of Judges; ….

D.N.J. L.R. 7.1.1. The issuance of the Local Rule was then signed by the Chief Judge "FOR THE COURT." (*Id.*). Whether a local rule was issued in one district is irrelevant to whether the local rule can be adopted in a different district. Rule 83(a)(1) requires a district court to "act[] by a majority of *its* district judges." (emphasis added). Here the Third-Party Funding Standing Order was issued only by one judge. The Third-Party Funding Standing Order was therefore improperly issued in violation of Rule 83(b) and Rule 7.1, and is an abuse of discretion.

### C.    The District Court Was Required, at a Minimum, to Proceed Through the More Vigorous Local Rule Vetting Process if it Sought to Amend Rule 7.1 Disclosure Requirements

If the district court wanted to issue disclosure requirements to supplement Rule 7.1, it was required (at a minimum) to go through the more rigorous vetting process to make a local rule.  Rule 83(b), Fed.R.Civ.P.  The Committee Notes on Rule (2002) state that "Rule 7.1 does not prohibit *local rules* that require disclosures in addition to those required by Rule 7.1." (emphasis added).  The district court only cited to local rules of other courts to justify that "I am not the only district court judge in the country who requires disclosures beyond what Rule 7.1 requires." *Nimitz*, 2022 U.S. Dist. LEXIS 215395, *6.  However, the district court issued a standing order, not a local rule.  Rule 83(b) governs standing orders, whereas Rule 83(a) governs local rules.  Under Rule 83(a), "a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice" only after "giving public notice and an opportunity to comment" before issuance of any local rule.  The district court's Standing Orders were issued by only one of four judges in the district.  Furthermore, the district court did not give public notice nor an opportunity to be heard prior to issuing its Standing Orders.

The amicus briefs also cite to no authority supporting that a single judge can issue a standing order impacting Rule 7.1 disclosures with respect to Third Party Litigation funding in all cases.  They cite to either local rules from other districts,

standing order for "all Judges" within a district, disclosures required by statute, or case management orders relevant to a class action or an MDL case. (Intel Brief at 6-8, Chamber Brief at 5-7). On the other hand, the Standing Orders are applicable to all cases.

This is not to say that a local rule is appropriate to supplement the Rule 7.1 disclosure requirements. As explained in the 2002 Advisory Committee Notes for Rule 7.1:

> Although the disclosures required by Rule 7.1(a) may seem limited, they are calculated to reach a majority of the circumstances that are likely to call for disqualification on the basis of financial information that a judge may not know or recollect. Framing a rule that calls for more detailed disclosure will be difficult. Unnecessary disclosure requirements place a burden on the parties and on courts. Unnecessary disclosure of volumes of information may create a risk that a judge will overlook the one bit of information that might require disqualification, and also may create a risk that unnecessary disqualifications will be made rather than attempt to unravel a potentially difficult question.

In other words, Rule 7.1 is intended to reach necessary information without demanding too much information because too much information can be as dangerous as too little information.

Although Rule 7.1 was amended this year solely to address disclosures in diversity cases (the cases here involve a federal question of patent law), Rule 7.1 was not amended to require any further disclosure in non-diversity cases. The

decision not to amend the disclosure requirement for all cases is consistent with the

Advisory Committee Notes from 20 years ago that concluded:

> It has not been feasible to dictate more detailed disclosure
> requirements in Rule 7.1(a).

Regardless, both Standing Orders were improperly issued in violation of Rule 83(b)

and Rule 7.1 so they are an abuse of discretion.

### D.     The Court's Inherent Powers Do Not Justify the Standing Orders

The amicus briefs wield the court's inherent powers as a justification to craft

any procedures governing the litigation before it.  (Intel Brief at 5; Chamber Brief at

8).  However, the inherent powers of the court cannot justify any action of the court

governing litigation.  A court has only "'certain implied powers must necessarily

result to our Courts of justice from the nature of their institution,' powers 'which

cannot be dispensed with in a Court, because they are necessary to the exercise of

all others.'"  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Because they are

extraordinary, "inherent powers must be exercised with restraint and discretion …."

*Chambers*, 501 U.S. at 44-45.  Here, the Federal Rules set of the scope and

procedures by which the district court can exercise its authority to amend court rules.

As explained above, the district court exceeded its authority set by Rule 83(b) and

did not comply with Rule 83(a) when it implemented its Standing Orders changing

the Rule 7.1 disclosure requirements.

## II.  THE STANDING ORDERS DO NOT SUPPORT IMPORTANT PURPOSES AND ARE BIASED

If, as the amicus contend, the Standing Orders are needed to ensure that the court does not have any conflict, then why do the 2022 amendments to Rule 7.1 leave unchanged the disclosure requirements for non-diversity cases?  The Standing Orders demand far more detail than necessary to determine conflicts, are biased against certain entities, and are not supported by public policy.

### A.    The Standing Orders Will Only Create the Misperception that a More Thorough Conflict Determination will be Performed While Creating Inconsistent Gaps

The amicus arguments that the Standing Orders are necessary for conflict determination are incorrect because the Standing Orders request too much information from only a limited set of entities and substantial irrelevant information that is either unnecessary for a conflicts determination or will impede a valid conflict analysis.

The district court's Rule 7.1 Standing Order here is a poster child for requiring too much by requiring "the name of every owner, member, and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified." (Appx003).  At the same time, the Rule 7.1 Standing Order only requires the glut of information from a limited number of entities:  "nongovernmental joint venture, limited liability corporation, partnership, or limited liability partnership." (*Id.*).  The

Standing Order raises questions regarding both over-disclosure and under-disclosure:

- If every owner, member, and partner of a party needs to be identified for the purposes of determining conflicts, why are corporations, limited liability companies, and trusts not required to disclose such information?

- If a limited partnership is publicly traded, for example Enterprise Products Partners LP with a market cap of approximately $50 billion and an average trading volume of 5 million shares per day, will it need to list all its stockholders?

  - Will it need to update its stockholders daily as stockholders buy and sell the millions of shares?

  - If any of those stockholders are partnerships, will the publicly traded company then need to seek discovery from those partnerships as to their owner and so on?

- If a company changes its form from a partnership to a corporation, why are its owners no longer relevant for conflict purpose because it is a corporation?

The Rule 7.1 Standing Order runs the risk of both requiring no information from some entities and too much information from others.  Furthermore, at some level such an ownership analysis is irrelevant to determining conflicts.  *E.g., Cent. Tel. Co. of Va. v. Sprint Comm. Co. of Va.*, 715 F.3d 501, 515–16 (4th Cir. 2013) (holding that a professionally managed IRA is within the 28 U.S.C. § 455(d)(4)(i) exception; *Arunachalam v. Int'l Bus. Machines Corp.*, 2016 WL 5403592, at *1 (D. Del. Sept. 26, 2016), aff'd, 759 F.App'x 927, 933-34 (Fed.Cir. 2019) (holding that the District of Delaware's 529 plan, Vanguard Wellington Admiral, and Fidelity Freedom 2020,

among other investment funds, were "common investment fund[s]" within the meaning of 28 U.S.C. 455(d)); *O'Connor v. Wells Fargo Bank, N.A.*, 2013 WL 1281925, at *1 (N.D. Ga. Mar. 27, 2013) (holding that "TIAA–CREF Retirement Fund" was within the § 455(d)(4)(i) exception). Which brings us back to the conclusion from the 2002 Advisory Committee Notes with respect to the disclosure requirements that have remained unchanged for decades: it is still "not [] feasible to dictate more detailed disclosure requirements in Rule 7.1(a)" for non-diversity cases.

As for the Third-Party Funding Standing Order, if determining conflicts were the reason for the standing order, then disclosure of the name of any applicable entity would be sufficient for determining conflicts. The Third-Party Funding Standing Order goes beyond requiring the name to require (i) information that unnecessary unless the name raises a possible flag (address and place of formation), and (ii) information that has no applicability to determining conflicts (whether any Third-Party funder's approval is necessary for litigation or settlement decisions, the nature of the terms and conditions relating to that approval, a description of the nature of the financial interest). (Appx004-005). And the most irrelevant aspect of the Third-Party Funding Standing Order to conflicts is inviting parties to investigate opposing parties as to whether there are any ethical issues raised: a party may seek discovery from the opposing party on whether "the interests of any funded parties or class (if applicable) are not being promoted or protected by the arrangement, conflicts of

interest exist as a result of the arrangement, or other such good cause exists."
(Appx005).

The Standing Orders are therefore not tailored to provide any expectation that
a conflict check would be more effective than relying on the standard disclosures
under Rule 7.1.

### B.    The Standing Orders are Biased Because They are Only Interested in Controls and Transparency for Certain Entities

The amicus brief mistakenly contends that the Standing Orders will ascertain
whether the plaintiff is controlling the litigation. (Chamber Brief at 9).  The Stand
Orders, however, do not seek who controls the litigation or full transparency in the
litigation.

The Rule 7.1 Standing Order only seeks information about ownership
(Appx003), which will not shed any light on whether anyone other than the owner
controls the litigation.  For transparency, the Rule 7.1 Standing Order is only
concerned with certain types of entities (nongovernmental joint venture, limited
liability corporation, partnership, or limited liability partnership) and leaves massive
holes in transparency regarding certain types of entities such as corporations
(including privately held corporations, which are not required to make Rule 7.1
disclosures), trusts, and limited liability companies.

The Third-Party Funding Standing Order only seeks whether a third-party has
some control and transparency over the litigation in a very limited situation: if the

third-party provides (i) non-recourse funding for the litigation and (ii) in exchange for the funding receives a contingent financial interest in the litigation contingent on the results or a non-loan/non-monetary result.  (Appx004).  And, if both (i) and (ii) are satisfied, the third party is required to be disclosed under 1(a) of the Third-Party Funding Standing Order and disclose its financial interest under 1(c) ***even if under 1(b) the response is that the third-party has no control over the litigation***.

Notably, the Third-Party Funding Standing Order is not interested in whether defendants are receiving financial assistance, or an unknown third party is controlling the defense of a litigation.[1]  For example, a third-party may approach a defendant who is financially unable or unwilling to defend the case and offer to control and fund the defense for the sole purpose of secretly attacking a plaintiff. The Third-Party Funding Standing Order is also not interested in companies secretly ganging up on a competitor.  For example, a third-party may fund an unrelated company to sue a mutual competitor but, if the third party does not have financial

---

[1] Is a defense attorney who provides a discounted hourly rate and is eligible to receive a bonus fee for a successful outcome of the litigation (or is eligible to receive its full fee if it successfully receives an award of attorneys' fees for its client) required to be disclosed under the Third-Party Litigation Funding Standing Order because the attorney is providing funding for attorneys' fees and/or expenses on a non-recourse basis (*e.g.*, the discount on the fees) in exchange for a financial interest that is contingency on the results of the litigation (*e.g.*, a bonus fee if the case is dismissed or is otherwise deemed a success by the client)?

interest in the litigation, then it would not need to be disclosed under either Standing Order or Federal Rule.  Instead, the Third-Party Funding Standing Order is only interested in who controls the litigation for two classes of parties: (1) those who do not have the financial ability to fund the litigation without such non-recourse funding and (2) risk averse entities.  The alleged transparency sought by Third-Party Funding Standing Order is thus biased against a specific perceived villain while leaving large swaths of parties opaque.  Public policy therefore does not justify such highly subjective Standing Orders requiring "transparency" for only limited entities.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Petitioner respectfully requests that the Court issue a writ of mandamus directing the district court to vacate its Hearing Order and cease the district court's judicial investigation of the Petitioner.

Respectfully Submitted,

December 13, 2022            */s/ David R. Bennett*
                            DAVID R. BENNETT
                            DIRECTION IP LAW
                            P.O. Box 14184
                            Chicago, IL 60614
                            D: (312) 291-1667
                            dbennett@directionip.com

                            *Attorneys for Petitioner Waverly Licensing LLC*

15

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Federal Circuit by using the

appellate CM/ECF system on December 13, 2022.

A copy of the foregoing was served upon the following counsel of record by

electronic mail and upon the district court by hand-delivery:

Via Email to counsel for Defendants:

Chad S.C. Stover, Barnes & Thornburg LLP, 1000 North West Street, Suite

1500, Wilmington, DE 19801, chad.stover@btlaw.com; and

Glenn R. Bronson, J. Jeffrey Gunn, and James C. Watson, Trask Britt P.C.,

230 South 500 East, Suite 300, Salt Lake City, UT 84101,

GRBronson@traskbritt.com, JGunn@traskbritt.com, JCWatson@traskbritt.com

Anne Shae Gaza, Young, Conaway, Stargatt & Taylor LLP, Rodney Square,

1000 North King Street, Wilmington, DE 19801, agaza@ycst.com

Via Email to counsel for Amicus:

Daryl Joseffer, Jennifer B. Dickey, U.S. Chamber Litigation Center, 1615 H

St. NW, Washington, DC 20062, djoseffer@uschamber.com,

JDickey@USChamber.com.

William F. Lee, Sofia C. Brooks, Wilmer Cutler Pickering Hale and Dorr

LLP, 60 State Street, Boston, MA 02109, william.lee@wilmerhale.com,

sofie.brooks@wilmerhale.com

Thomas G. Saunders, Gregory H. Lantier, Amanda L. Major, Joshua L.

Stern, Matthew E. Vigeant, Gary M. Fox, Wilmer Cutler Pickering Hale and Dorr

LLP, 1875 Pennsylvania Avenue, NW, Washington, DC 20006,

thomas.saunders@wilmerhale.com, gregory.lantier@wilmerhale.com,

amanda.major@wilmerhale.com, joshua.stern@wilmerhale.com,

matthew.vigeant@wilmerhale.com, gary.fox@wilmerhale.com,

<u>Via Hand Delivery to the Court</u>:

The Honorable Colm F. Connolly
J. Caleb Boggs Federal Building
844 N. King Street
Unit 31
Room 4124
Wilmington, DE 19801-3555

December 13, 2022

/s/ David R. Bennett
DAVID R. BENNETT
Direction IP Law
P.O. Box 14184
Chicago, IL 60614
D: (312) 291-1667
dbennett@directionip.com

# CERTIFICATE OF COMPLIANCE

The foregoing reply brief filing complies with the relevant type-volume limitation of the of Fed. R. App. P. 21(d)(1) because this petition has been prepared using a 14-point proportionally-spaced typeface and includes 3,522 words.

December 13, 2022

*/s/ David R. Bennett*
DAVID R. BENNETT
Direction IP Law
P.O. Box 14184
Chicago, IL 60614
D: (312) 291-1667
dbennett@directionip.com